IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH L. MYERS, *et al.*,      :

      Plaintiffs,

      v.      :      Case No. 3:13-cv-75

BRICKLAYERS AND MASONS      JUDGE WALTER H. RICE
LOCAL 22 PENSION PLAN, *et*
*al.*,      :

      Defendants.

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT (DOC. #41), AND OVERRULING DEFENDANT
BRICKLAYERS AND MASONS LOCAL 22 PENSION PLAN AND THE
BOARD OF TRUSTEES OF THE BRICKLAYERS AND MASONS LOCAL
22 PENSION PLANS' MOTION FOR SUMMARY JUDGMENT (DOC.
#43), CONSTRUED BY THE COURT AS CROSS-MOTIONS FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD; OVERRULING
PLAINTIFFS' OBJECTION (DOC. #57); AWARDING PLAINTIFF
DISABILITY RETIREMENT BENEFITS RETROACTIVE TO THE DATE
THEY ACCRUED UNDER THE PLAN, ALONG WITH ATTORNEY'S
FEES AND EXPENSES; PLAINTIFF TO SUBMIT APPLICATION FOR
ATTORNEY'S FEES AND EXPENSES WITHIN 30 DAYS; CASE TO
REMAIN ON COURT'S ACTIVE DOCKET

---

Plaintiffs Kenneth and Kim Myers filed suit under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the

denial of claims for disability retirement benefits by the Bricklayers and Masons

Local 22 Pension Plan ("Local 22") and its Board of Trustees (collectively the

"Local 22 Defendants"), and by the Bricklayers and Trowel Trade International

Pension Fund ("IPF") and its Board of Trustees (collectively the "IPF Defendants"). The Court previously dismissed all claims against the IPF Defendants.[1]

This matter is currently before the Court on cross-motions for summary judgment filed by Plaintiffs (Doc. #41), and by the Local 22 Defendants (Doc. #43). For the reasons set forth below, the Court SUSTAINS Plaintiffs' Motion for Summary Judgment (Doc. #41), and OVERRULES the Local 22 Defendants' Motion for Summary Judgment (Doc. #43). Over Plaintiffs' Objection (Doc. #57), the Court construes both motions as motions for judgment on the administrative record.

## I.    Background and Procedural History

Plaintiff Kenneth Myers ("Myers") worked in the masonry business for twenty years. It is undisputed that he has a vested interest in the Bricklayers and Masons Local 22 Pension Plan (the "Plan"), a jointly-administered, multi-employer, employee benefit plan governed by ERISA. After suffering a heart attack on December 2, 2009, while working for a union employer, Myers was found by the Social Security Administration to be totally and permanently disabled. From December 20, 2009, until May 27, 2010, Myers collected $5,249.37 in short-term disability benefits through the Ohio Bricklayers Health and Welfare Fund. Myers Aff. ¶ 7; Doc. #41-6, PageID#539.

---

[1] Plaintiffs have moved to vacate that Order, Doc. #53, and the motion is not yet ripe for decision.

2

On October 3, 2011, Myers applied for disability retirement benefits through the Plan. On October 17, 2011, the Plan denied Myers's claim, stating that he did not meet the eligibility requirements because he was "not an Active Participant" and had "incurred a Break in Service." Doc. #45-5, PageID##703-04. A "Break in Service" is defined in Section 1.7 of the Plan as the failure to complete more than 435 "Hours of Service" during a Plan Year. Doc. #45-1, PageID#612. Only those "Hours of Service" worked for Employers who contribute to the Plan are counted. Doc. #45-1, PageID#614. In the five years prior to his heart attack, Myers worked mainly for non-union contractors who did not contribute to the Plan.

Myers appealed the adverse benefit determination, but lost. On January 3, 2012, the Board of Trustees of the Local 22 again found that Myers was ineligible because he had incurred a Break in Service in each Plan Year 2005, 2006, 2007, 2008, 2009, and 2010. Doc. #45-6, PageID#706. In October of 2012, counsel for Myers contacted the Plan administrators, alleging that Myers did not receive a full and fair review of his claim. He argued that the Plan had failed to tell Myers what additional information was needed to perfect his claim. Doc. #47-4, PageID##770-74.

On December 12, 2012, Sarah Hicks, legal counsel for the Plan, responded that, in order to qualify for disability retirement benefits, Myers "must have performed at least 435 Hours of Service under the Plan . . . during the current or prior plan year." She indicated that "[t]o advance his claim for benefits, Mr. Myers would need to produce records or other documentation that would demonstrate he

3

worked 435 Hours of Service as defined by the Plan in 2009 or 2010." Records showed that Myers had only 349 Hours of Service in Plan Year 2009, and 207.5 Hours of Service in Plan Year 2010. Doc. #47-5, PageID##775-76.

On March 11, 2013, Myers and his wife, Kim, filed suit against the Local 22 Defendants, pursuant to 29 U.S.C. § 1132(a)(1)(B), which permits a participant or beneficiary of an employee benefit plan governed by ERISA to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Plaintiffs allege that the adverse benefit determination is arbitrary and capricious, and contrary to law, because, in calculating his Hours of Service for Plan Year 2010, the Plan administrator failed to give Myers credit for the time he received short-term disability benefits. According to the Plan, there is no "Break in Service" if the failure to be credited with 435 hours in a Plan Year is due to an approved disability. Doc. #41-4, PageID#483. Plaintiffs further allege that the Plan Administrator failed to provide a full and fair review of Myers's claim, in that it failed to advise him what documents were needed to perfect his claim.

## II.    Procedural Issues

The parties have filed cross-motions for summary judgment. Docs. ##41, 43. In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), however, the Sixth Circuit held that, in adjudicating ERISA claims, "the summary

4

judgment procedures set forth in Rule 56 are inapposite . . . and thus should not be utilized in their disposition." Rather, a court must review the administrative record and make findings of fact and conclusions of law concerning the merits of the action. *Id*. at 619 (Gilman, J., concurring in the judgment and delivering the opinion of the Court on the summary judgment issue). As a general rule, the court cannot consider evidence that was not available to the plan administrator at the time the adverse benefit determination was made. However, when a plaintiff alleges a due process violation, the court may consider additional evidence to resolve that procedural challenge to the administrator's decision. *Id.*

Plaintiffs' counsel explained at oral argument that, because Plaintiffs *have* alleged a procedural due process violation and are asking the Court to consider evidence *outside* the administrative record, in the form of short-term disability benefits received by Myers, counsel believed that a motion for summary judgment was the appropriate vehicle.

On June 27, 2014, the Court issued an Order, Doc. #56, indicating its intent to treat the cross-motions for summary judgment as cross-motions for judgment on the administrative record, as directed by the Supreme Court in *Wilkins*. It gave the parties seven days to file objections to this procedure. On July 2, 2014, Plaintiffs filed an Objection, Doc. #57, maintaining that *Wilkins* does not make it clear what procedure is to be followed when a due process violation is alleged. For lack of better guidance, they styled their motion a motion for summary judgment. Plaintiffs object to any procedure that would ignore evidence of Kenneth Myers's

5

short-term disability payments in determining whether he is eligible for disability retirement benefits.

*Wilkins* specifically states that "[t]he district court may consider evidence outside the administrative record . . . if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." 150 F.3d at 619. But *Wilkins* makes it clear that, even in those limited situations when the district court considers evidence outside the administrative record, summary judgment procedures are not to be used. Rather, the district court is to review the administrator's decision according to the applicable standard, and issue findings of fact and conclusions of law. *Id.*

Accordingly, to the extent that Plaintiffs object to the Court construing the cross-motions for summary judgment as cross-motions for judgment on the administrative record, that Objection, Doc. #57, is OVERRULED. For the reasons set forth below, however, this does not necessarily mean that the Court cannot consider evidence of Myers's short-term disability payments.

## III.    Due Process

In order to determine whether it may consider evidence outside the administrative record, the Court turns first to the alleged due process violation. Myers maintains that his due process rights were violated when the Plan administrator failed to inform him that, if he had only submitted evidence of his

6

short-term disability payments, he would be deemed to have completed at least 435 Hours of Service for Plan Year 2010, and would be eligible for disability retirement benefits.

Plan administrators are required to "provide adequate notice in writing" to any participant whose claim has been denied, "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The participant must be given a "reasonable opportunity" for a "full and fair review" of that decision. 29 U.S.C. § 1133(2). It is sufficient if the plan administrator "substantially complies" with these provisions. *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 808 (6th Cir. 1996).

In support of the alleged due process violation, Myers relies on subsection (iii) of the following Department of Labor regulation, governing notice of adverse benefit determinations under ERISA:

> The notification shall set forth, in a manner calculated to be understood by the claimant--
> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) *A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary*;
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review . . .

29 C.F.R. § 2560.503-1(g)(1) (emphasis added).

7

Courts, however, have narrowly interpreted subsection (iii) as requiring the plan administrator to tell a claimant what additional information must be supplied to bring the claim to completion, not what additional information is needed to win the appeal. *See Terry v. Bayer Corp.*, 145 F.3d 28, 39 (1st Cir. 1998) (holding that "win the appeal" is not synonymous with "perfect the claim"); *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 661 (7th Cir. 1997) (holding that it is "only reasonable" to conclude that the regulation applies "when more information is needed" for a plan administrator to "reach her determination"). *See also Bojorquez v. E.F. Johnson Co.*, 315 F. Supp.2d 1368, 1373-74 (S.D. Fla. 2004) ("insurance company does not have to tell a claimant what information he will need to provide in order to 'win' his appeal"); *Dutton v. Unum Provident Corp.*, 170 F. Supp.2d 754, 760 (W.D. Mich. 2001) ("the §1133 notice requirement does not require the administrator to inform the claimant of what additional information the claimant should include in order to win an appeal").

Under the circumstances presented here, the Plan administrator substantially complied with ERISA requirements concerning notice of an adverse benefit determination. The notice clearly informed Myers that his claim was being denied because he was not an Active Participant, having suffered a Break in Service. It also cited to the relevant Plan provisions, and informed him how to appeal the adverse benefit determination.[2] Moreover, given that the Plan administrator

---

[2] Myers notes that Article II, § 2.10 of the Plan's Trust Agreement states that the "Board of Trustees shall adopt a claims procedure to allow an aggrieved participant

8

needed no further information to make a decision on the merits of Myers's claim, there was no need to include a description of additional material needed to "perfect the claim."

Because Plaintiffs have failed to establish a due process violation, the Court will consider only the evidence that was before Plan Administrator at time the decision was made.

## IV.   Analysis

### A.   Standard of Review

In *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115.  If such discretionary authority is

---

or beneficiary to dispute and/or protest any decision or action of the Board.  Such procedure shall be in writing and made available to any participant or beneficiary or interested party upon request."  Doc. #45-2, PageID#682.  Article X, Section 10.15 of the Plan states that the Board of Trustees "has adopted a Claims and Appeals procedure," which is included in the Summary Plan Description.  Doc. #45-1, PageID#649.  In turn, the Summary Plan Description sets forth all applicable appeal procedures.  Doc. #41-4, PageID##502-04.  These are the same procedures referred to in the October 17, 2011, letter sent to Myers by the Plan administrator.  To the extent that Plaintiff's counsel argues that Article II, § 2.10 of the Plan's Trust Agreement implies that there is yet *another* layer of appeal procedures, he is simply mistaken.

clearly granted, the employee must show that the decision was arbitrary and capricious. This standard of review is "extremely deferential," and the plan administrator's decision "must be upheld if it results from a deliberate principled reasoning process and is supported by substantial evidence." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064-65 (6th Cir. 2014) (internal quotations omitted).

Here, the parties in this case disagree about whether the Plan documents clearly grant the Plan administrator authority to determine eligibility for benefits or to construe the terms of the Plan. Article I, Section 1.2 of the Plan grants the Board of Trustees "exclusive authority and discretion to manage and control the Trust Fund." Doc. 45-2, PageID#676. The Court agrees that this statement, standing alone, does not suffice to warrant application of the "arbitrary and capricious" standard. However, the Summary Plan Description also states that "[t]he Plan is administered and operated by the Plan Administrator in its sole and absolute discretion. The Plan Administrator, and any duly authorized delegate thereof, has the complete authority to administer, apply and interpret the Plan and any related documents and to decide all matters arising in connection with the operation or administration of the Plan." Doc. #41-4, PageID#476.

Numerous courts have held that, in determining the appropriate standard of review, it is appropriate to consider grants of authority contained in summary plan descriptions. *See, e.g., Pettaway v. Teachers Ins. and Annuity Ass'n of Am.*, 699 F. Supp.2d 185, 200 (D.D.C. 2010) ("it is proper to consider the Plan Description

as part of the employee benefit plan in analyzing whether a grant of discretionary authority was made"); *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002) (holding that the summary plan description "is a plan document and should be considered when interpreting an ERISA plan."). Because the Summary Plan Description contains a clear grant of discretionary authority, the Court will apply the "arbitrary and capricious" standard of review.

**B.      Discussion**

For the reasons set forth below, the Court finds that the Local 22 Defendants acted in an arbitrary and capricious manner in denying Myers's claim for disability retirement benefits.

**1.      Relevant Plan Provisions as Applied to Myers**

Article IV of the Plan sets forth the provisions concerning Disability Retirement Benefits. Section 4.1 states, "[a] Participant may retire on a Disability Pension if he becomes permanently and totally disabled before attaining age sixty-two (62) after having accrued at least ten (10) Years of Credited Service, including at least one (1) Year of Future Credited Service." Doc. #45-1, PageID#626.

There is no question that Myers became permanently and totally disabled before reaching age 62, or that he had accrued the required Years of Credited Service and Future Credited Service. The only question is whether he was still a "Participant" in the Plan when he submitted his application for disability retirement benefits on October 3, 2011. The Plan Administrator found that he was not.

11

Section 1.27 of the Plan defines a "Participant" as "an Employee who, at the particular time, has satisfied the eligibility requirements of the Plan and who has not ceased participation pursuant thereto." *Id.*, PageID#615. An "Employee" is "a person who is an Employee of an Employer and who is covered by a Collective Bargaining Agreement . . . " *Id.*, PageID#613. An "Employer" is generally anyone who is bound by the Collective Bargaining Agreement to make contributions to fund the Plan. *Id.*

Section 2.1 of the Plan, governing "Participation and Vesting," provides that a person will "become a Participant the first day of the month following the month in which the person completes an Hour of Service for a Contributing Employer." *Id.*, PageID#619. Section 2.1 also states that "[p]articipation in the Plan shall cease upon the earlier of the following: (a) Death, retirement, or disability[;] (b) Incurring a Break-in-Service. However, a person whose participation ceases may become a Former Participant." *Id.* A "Former Participant" is defined as "a Person whose participation has ceased under Section 2.1, but who has not incurred a Forfeiture of Service. . . " *Id.*, PageID#614. Under Section 1.18, a Participant whose rights have vested, cannot forfeit service. *Id.*[3]

The Plan administrator found that Myers was no longer an "Active Participant" because he had incurred a "Break-in-Service," defined as "the failure to

---

[3]   It is undisputed that Myers is a Vested Employee.

complete more than 435 Hours of Service during a Plan Year." *Id.*, PageID#612.[4]
An "Hour of Service" means "[e]ach hour for which an Employee is paid, or
entitled to payment, for the performance of duties during the Plan Year." *Id.*,
PageID#614. A "Plan Year" runs from November 1 through October 31. *Id.*,
PageID#616. Myers concedes that he incurred a Break-in-Service in Plan Years
2005, 2006, 2007, 2008, and 2009, because he did not complete 435 Hours of
Service in any of those Plan Years. Because his participation had ceased, he
became a Former Participant.

The question is whether he re-qualified as a Participant in Plan Year 2010,
which ran from November 1, 2009 through October 31, 2010. Section 2.2 of the
Plan specifically contemplates that a Former Participant may again become an
Active Participant upon re-employment with an Employer. It states "[i]f an
Employee satisfies the participation requirements of Section 2.1, terminates
employment with an Employer, and is later re-employed by an Employer, the
Employee will become a Participant when re-employed, unless upon re-
employment, the Employee is not working in Covered Employment of has already
incurred a Forfeiture of Service." Doc. #45-1, PageID#619.

Consistent with Section 2.2, Sarah Hicks, legal counsel for the Local 22
Defendants, indicated that Myers could "advance his claim for benefits" if he could
"produce records or other documentation that would demonstrate that he worked

---

[4]  Although the term "Active Participant" is not defined in the Plan documents, it
is synonymous with "Participant." "Active Participants" are entitled to benefits;
"Former Participants" are not.

435 Hours of Service as defined by the Plan in 2009 or 2010." Doc. #47-5, PageID#775.[5] Plan Year 2010 began on November 1, 2009. It is undisputed that between during Plan Year 2010, Myers worked 207.5 hours for an Employer. Frazier Aff. ¶11, Doc. #45, PageID#606. This left him 227.5 hours short of the 435-hour requirement.

Myers contends, however, that the Plan administrator should have also given him credit for the hours for which he was paid short-term disability benefits, from December 22, 2009 through May 27, 2010. This would have pushed him well beyond the 435-hour requirement. The Court agrees that, in failing to give Myers credit for these "Hours of Service," the Plan administrator acted in an arbitrary and capricious manner.

The Summary Plan Description states, "[y]ou will not have a one-year Break in Service if you fail to be credited with 435 hours in a Plan Year if the failure was due to an approved disability . . . " Doc. #41-4, PageID#483. In addition, the Plan's definition of "Hour of Service" incorporates by reference Department of Labor Regulations 29 C.F.R. §§ 2530.200b-2(b) and 2530.200b-2(c). Doc. #45-1, PageID#615.

For purposes of determining whether there has been a "break in service," an "hour of service" includes "each hour for which an employee is paid, or entitled to

---

[5]  Plaintiffs argue that the word "worked" is inaccurate, since "Hours of Service" also includes hours for which Myers was paid while on short-term disability leave. However, as Defendants note, this statement is contained in a letter written by Hicks to Plaintiffs' counsel in December of 2012, long after the appeal procedure was concluded. Therefore, although inaccurate, it cannot be deemed prejudicial.

14

payment, for the performance of duties for the employer during the applicable computation period." 29 C.F.R. § 2530.200b-2(a)(1). An "hour of service" also includes "each hour for which an employee is paid, or entitled to payment, by the employer on account of a period of time during which no duties are performed . . . due to . . . incapacity (including disability) . . ." 29 C.F.R. § 2530.200b-2(a)(2). No more than 501 hours of service are required to be credited for any single continuous period of disability. 29 C.F.R. § 2530.200b-2(a)(2)(i). A payment is deemed to have been made by an employer even if made indirectly through a trust fund or insurer to which the employer contributes premiums. 29 C.F.R. § 2530.200b-2(a)(2)(ii).

In this case, Myers received Accident and Sickness Weekly Benefits through the Ohio Bricklayers' Health and Welfare Fund in the amount of $250 per week for 20 weeks, from December of 2009 through May of 2010. Voegeli Aff. ¶13, Doc. #47-7, PageID#780. This short-term disability benefit was payable for each full week of disability. One-seventh of the weekly benefit was payable for each day of disability. *Id.* at ¶11. Employers were required to make contributions to the Ohio Bricklayers' Health and Welfare Fund pursuant to a collective bargaining agreement. *Id.* at ¶7, PageID#779.

As Plaintiffs note, this is the same collective bargaining agreement that required Employers to contribute to the Local 22 Pension Plan. Doc. #41-5. The Local 22 Defendants were therefore on notice that short-term disability payments were generally available.

15

Moreover, the Court finds that the Local 22's Plan administrator had actual notice that Myers received short-term disability payments. It is undisputed that, in support of his claim for disability retirement benefits, Myers sent the Plan a copy of the Social Security Administration's September 2, 2011, Decision, which found that Myers had been totally and permanently disabled since December 2, 2009. Myers Aff. ¶13, Doc. #41-6, PageID#540. That Decision specifically states that Myers "received sick pay in 2010 in the amount of $5,249.37." Doc. #41-12, PageID#576.

Under the circumstances presented here, regardless of whether Myers presented any *additional* evidence of the short-term disability payments, the Local 22 Plan administrator should have taken the fact of those payments into account in determining whether Myers had a "Break-in-Service" for Plan Year 2010. However, there is absolutely no evidence in the record to suggest that Defendants considered the short-term disability payments at all. Rather, they simply looked at the hours that Myers had actually worked.

Defendants now argue that, even if they had taken into account the hours for which Myers received short-term disability payments, this would not have cured the Break-in-Service. Department of Labor regulations, incorporated by reference into the Plan documents, govern how to determine hours of service to be credited for periods of time when no duties are performed, such as when an employee is on disability leave. The applicable regulation reads, in relevant part, as follows:

16

(b) Special rule for determining hours of service for reasons other than the performance of duties. In the case of a payment which is made or due on account of a period during which an employee performs no duties, and which results in the crediting of hours of service under paragraph (a)(2) of this section . . . the number of hours of service to be credited shall be determined as follows:

(1) Payments calculated on the basis of units of time.

(i) Except as provided in paragraph (b)(3) of this section, in case of a payment made or due which is calculated on the basis of units of time, such as hours, days, weeks or months, the number of hours of service to be credited shall be the number of regularly scheduled working hours included in the units of time on the basis of which the payment is calculated. For purposes of the preceding sentence, in the case of an employee without a regular work schedule, a plan may provide for the calculation of the number of hours to be credited on the basis of a 40–hour workweek or an 8–hour workday, or may provide for such calculation on any reasonable basis which reflects the average hours worked by the employee, or by other employees in the same job classification, over a representative period of time, provided that the basis so used is consistently applied with respect to all employees within the same job classifications, reasonably defined. . .

\* \* \*

(2) Payments not calculated on the basis of units of time.

(i) Except as provided in paragraph (b)(3) of this section, in the case of a payment made or due, which is not calculated on the basis of units of time, the number of hours of service to be credited shall be equal to the amount of the payment divided by the employee's most recent hourly rate of compensation (as determined under paragraph (b)(2)(ii) of this section) before the period during which no duties are performed.

(ii) For purposes of paragraph (b)(2)(i) of this section an employee's hourly rate of compensation shall be determined as follows:

17

> (A) In the case of an employee whose compensation is determined on the basis of an hourly rate, such hourly rate shall be the employee's most recent hourly rate of compensation. . .

29 C.F.R. § 2530.200b–2(b).

As previously noted, Myers received weekly payments of approximately $250.00 per week for 20 weeks. Voegeli Aff. ¶13, Doc. #47-7, PageID#780. Defendants nevertheless argue that because each journeyman receives the same "lump sum" benefit of $250 per week, it is not a payment calculated on the basis of a unit of time. They then urge application of the calculation method set forth in 29 C.F.R. § 2530.200b-2(b)(2).

Dividing $249.97, the amount of the weekly short-term disability payment, by $35.71, Myers' most recent hourly rate of compensation, Defendants argue that Myers would receive credit for only 7 Hours of Service for each week he received short-term disability payments. When multiplied by the 23 weeks[6] for which short-term disability payments were received, Defendants note that this equals just 161 hours of credit. When this is added to the 207.5 hours that Myers actually worked for Plan Year 2010, this totals just 368.5 hours, still short of the 435-hour requirement.

---

[6] Myers initially claimed that he received 23 weeks of short-term disability payments. Although 23 weeks elapsed between the onset of Myers's disability and the final short-term disability payment, Accident and Sickness Weekly Benefits were limited to just 20 weeks of short-term disability payments. This discrepancy is immaterial for purposes of determining whether Myers is entitled to disability retirement benefits.

Defendants' argument is untenable. The short-term disability payments are clearly calculated on the basis of time. The regulation specifically refers to payments "calculated on the basis of units of time, *such as hours, days, weeks or months*." 29 C.F.R. § 2530.200b–2(b)(1)(i) (emphasis added). Myers was paid $249.97 per week for each week he was disabled. Had he been disabled for less than a full week, he would have received 1/7 of that amount for each day of disability. Voegeli Aff. ¶11, Doc. #47-7, PageID#780.

Accordingly, Defendants were required to apply the method for determining hours of service as set forth in 29 C.F.R. § 2530.200b–2(b)(1)(i). It is undisputed that Myers did not have a regular work schedule. Accordingly, the Plan was entitled to calculate the number of hours to be credited "on any reasonable basis which reflects the average hours worked by the employee, or by other employees in the same job classification, over a representative period of time, provided that the basis so used is consistently applied with respect to all employees within the same job classifications, reasonably defined." 29 C.F.R. § 2530.200b-2(b)(1)(i).

Defendants maintain that, had they used this method of calculation, they would have "looked back at the number of hours reported over the last 3, 6, and 9 months to determine the average hours worked by Mr. Myers on a monthly basis." Doc. #50, PageID#929. Myers's Pension History Report indicates that between March and December of 2009, he received credit for the following:

19

| Month | Hours Worked in Covered Employment |
|---|---|
| March 2009 | 0 |
| April 2009 | 0 |
| May 2009 | 0 |
| June 2009 | 0 |
| July 2009 | 69.5 |
| August 2009 | 126.5 |
| September 2009 | 80 |
| October 2009 | 0 |
| November 2009 | 151.5 |
| December 2009 | 56.0 |

Doc. #45-3, PageID##694-96.

Defendants maintain that "looking back over the previous 3 months Mr. Myers averaged 69 hours per month; over the previous 6 months he averaged 80.50; and over the previous 9 months he would have averaged only 53.70." Doc. #50, PageID#930. They then summarily conclude that none of these figures, when added to the 207.5 hours that Myers actually worked in Plan Year 2010, would push him above the 435-hour threshold. The Court disagrees with Defendants' calculations.

Myers received short-term disability payments for 20 weeks, or approximately 4.5 months. Even in the "worst case scenario," in which Myers averaged only 53.7 hours per month over the previous 9 months, Myers would get

credit for an additional 241.65 hours (53.7 hours x 4.5 months). When added to the 207.5 hours that he actually worked, this totals 449.15 Hours of Service, more than the 435 hours required.[7]

Had Defendants taken Myers's short-term disability payments into account, and had they calculated credit for Hours of Service as set forth in 29 C.F.R. § 2530.200b–2(b)(1)(i), applying their stated method of looking at averages for the past 3 months, 6 months, and 9 months, Myers would have received sufficient credit to push him over the 435-hour threshold. Accordingly, Defendants would have necessarily concluded that Myers did not suffer a "Break in Service" for Plan Year 2010, and that he was eligible for disability retirement benefits.

Defendants' decision to deny Myers's claim for disability retirement benefits is contrary to the Plan documents, and contrary to the evidence in the record. It is not the result of a "deliberate, principled reasoning process" and is not "supported by substantial evidence." *McClain*, 740 F.3d at 1064-65.

### 2. Remedy

Having determined that Defendants' decision to deny Myers disability retirement benefits was arbitrary and capricious, the Court must determine an appropriate remedy. In *Shelby County Health Care Corp. v. Majestic Star Casino,*

---

[7] Defendants complain that the number of hours for which Myers seeks credit is disproportionate to the number of hours he actually worked for union employers over the previous five years. They further argue that it is pure speculation that he would have worked more than 435 hours during Plan Year 2010 had he not become disabled. This, however, is not the relevant inquiry.

*LLC*, 581 F.3d 355 (6th Cir. 2009), the Sixth Circuit stated that "[w]here a district court determines that the plan administrator erroneously denied benefits, a district court 'may either award benefits to the claimant or remand to the plan administrator.'" *Id.* at 373 (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006)).

Remand is appropriate if the plan administrator's decision suffers from a procedural defect or if the administrative record is factually incomplete. *Id.* However, if the plan administrator simply reached the wrong conclusion, and the claimant was denied benefits to which he was clearly entitled, the court may award benefits without remanding the case. *Id.* at 373-74.

Here, it could be argued that the administrative record was incomplete in that, although the plan administrator was on notice that Myers had received $5,249.37 in disability benefits in 2010, it was not clear at that time whether that was a one-time lump sum payment or whether that was the total of several payments that were calculated on the basis of units of time. Nevertheless, any remand on that basis would be futile. It is now clear that Myers received weekly short-term disability payments. Moreover, as discussed above, had Myers been given appropriate credit for those "Hours of Service" in accordance with 29 C.F.R. § 2530.200b–2(b)(1)(i), he would have been deemed an "Active Participant" who would have been entitled to disability retirement benefits. For this reason, the Court concludes that no remand is warranted.

Myers was denied benefits to which he is clearly entitled. Accordingly, the Court awards Myers disability retirement benefits retroactive to the date on which they accrued under the Plan.

### 3. Attorney Fees and Expenses

Plaintiffs also seek an award of attorney's fees and expenses. Under 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The court considers five factors in determining whether such an award is appropriate:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006) (citing *Secretary of the Department of Labor v. King*, 775 F.2d 666 (6th Cir. 1985)). No single factor is determinative. *Id.*

"Where a plan administrator engaged in an inadequate review of the beneficiary's claim or otherwise acts improperly in denying benefits," attorney fees are appropriately awarded. *Shelby County Health Care Corp.*, 581 F.3d at 377. Here, Defendants completely disregarded the fact that Myers had received short-term disability benefits, and failed to credit him for those "Hours of Service," despite the fact that the Plan documents specifically incorporate Department of Labor regulations governing this issue, and specifically state that employees will

not suffer a "Break-in-Service" if the failure to complete 435 hours in a Plan Year is due to an approved disability. The Court therefore concludes that the first factor cuts in favor of an award of attorney's fees and costs.

The second factor also cuts in favor of an award. As a jointly-administered, multi-employer, employee benefit plan, the Local 22 Pension Plan presumably has adequate resources to satisfy an award. The third factor, deterrence, also supports an award of fees and costs. Plan administrators must be deterred from denying claims for benefits without thoroughly reviewing the administrative record. *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 531-32 (6th Cir. 2008). In calculating "Hours of Service," plan administrators cannot ignore evidence that a claimant received short-term disability payments. Since Myers is seeking benefits only for himself, and not for the common benefit of other participants, the fourth factor cuts against an award of fees and costs. *Id.* at 533; *see also Shelby County Health Care Corp.*, 581 F.3d at 378. As to the relative merits of the parties' position, for the reasons stated above, the Court finds that the final factor weighs in favor of awarding fees and costs to Myers.

Having considered each of the five factors, the Court finds that Plaintiffs are entitled to an award of attorney fees and expenses. Plaintiffs may submit an appropriate motion to the Court within 30 days from the date of this Decision and Entry.

## V. Conclusion

For the reasons set forth above, the Court finds that Defendants' denial of Myers's claim for disability retirement benefits was arbitrary and capricious. Accordingly, the Court SUSTAINS Plaintiffs' Motion for Summary Judgment (Doc. #41), and OVERRULES Defendant Bricklayers and Masons Local 22 Pension Plan and the Board of Trustees of the Bricklayers and Masons Local 22 Pension Plans' Motion for Summary Judgment (Doc. #43). Over Plaintiffs' Objection (Doc. #57), the Court construes these motions as cross-motions for judgment on the administrative record.

Plaintiff Kenneth Myers is AWARDED disability retirement benefits retroactive to the date they accrued under the Local 22 Pension Plan. Plaintiffs are also AWARDED reasonable attorney's fees and costs. Within 30 days, Plaintiffs shall submit an appropriate motion for fees and costs. The motion shall be briefed according to the local rules of the Court.

Because Plaintiffs' Motion to Vacate Order Sustaining Defendants Bricklayers and Trowel Trades International Pension Fund and the Board of Trustees of the Bricklayers and Trowel Trades International Pension Fund's Motion to Dismiss, Doc. #53, is not yet ripe for decision, this case shall remain on the Court's active docket.

Date: July 14, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE